1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   POR XIONG,

11              Plaintiff,                    No. CIV S-07-917 KJM

12        vs.

13
     MICHAEL J. ASTRUE,
14   Commissioner of Social Security,

15              Defendant.                    <u>ORDER</u>
     _____/
16

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying an application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court

20   will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's

21   cross-motion for summary judgment.

22   /////

23   /////

24   /////

25   /////

26   /////

                                              1

I. Factual and Procedural Background

In a decision dated December 1, 2006, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of bilateral hearing loss and depression but these impairments do not meet or medically equal a listed impairment; plaintiff has no exertional limitations but has environmental limitations requiring avoidance of concentrated exposure to noise, jobs that require good hearing, and he is limited to jobs with simple instructions that do not require literacy; plaintiff has no past relevant

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    work; plaintiff is not credible; plaintiff is able to perform work existing in significant numbers in

2    the regional economy; and plaintiff is not disabled.  Administrative Transcript ("AT") 25-26.

3               Plaintiff contends the ALJ improperly rejected medical opinions, improperly

4    discredited testimony of plaintiff and his relatives, incorrectly assessed his residual functional

5    capacity, and improperly relied on the testimony of a vocational expert.

6    II.  Standard of Review

7               The court reviews the Commissioner's decision to determine whether (1) it is

8    based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

9    record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

10   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

11   Substantial evidence means more than a mere scintilla of evidence, but less than a

12   preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

13   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

14   reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

15   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

16   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

17   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

18   detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

19   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

20   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

21   substantial evidence supports the administrative findings, or if there is conflicting evidence

22   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

23   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

24   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

25   1335, 1338 (9th Cir. 1988).

26   /////

3

III.  Analysis

    A.  Medical Opinions

        Plaintiff contends the ALJ improperly rejected the opinions of his treating psychiatrist at San Joaquin County Mental Health Services and the opinion of an examining psychologist, Dr. Regazzi.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

        The ALJ relied on the opinion of examining psychologist Dr. Wakefield, who opined that plaintiff could not be adequately assessed because of malingering.  AT 19, 150-154.

1    To the extent plaintiff could be assessed, Dr. Wakefield concluded that plaintiff could interact

2    with co-workers, supervisors, and the public at a minimally acceptable level in Hmong and that

3    plaintiff's concentration, persistence and pace, although presented as deficient, were stronger

4    than presented.  AT 154.  In relying on the opinion of Dr.Wakefield, the ALJ rejected the opinion

5    of Dr. Regazzi, who also was an examining physician.  AT 22, 189-194.  The ALJ rejected Dr.

6    Regazzi's opinion as relying too heavily on the credibility of plaintiff and as unsupported by

7    other evidence of record.  AT 22, 191, 329, 342-343.  While plaintiff characterizes Dr.

8    Wakefield's finding of malingering on the part of plaintiff to be "aberrant," it was within the

9    province of the ALJ to resolve the conflict of opinions between Drs. Wakefield and Regazzi,

10   each of whom relied on their own clinical observations and testing.[2]

11           With respect to plaintiff's assertion that the ALJ improperly rejected the opinions

12   of his treating psychiatrist at San Joaquin County Mental Health Services, there are simply no

13   opinions contained in those records with respect to plaintiff's functional limitations.  Plaintiff's

14   reliance on the assessed GAF of 40 is untenable.  AT 332.  Although the ALJ did not specifically

15   address the GAF assessed by plaintiff's treating psychiatrist, the ALJ did not err in failing to do

16   so.  The psychiatrist made no assessments with respect to work functions and the GAF does not

17   correlate to the severity assessments utilized in Social Security disability determinations.[3]

18   _____

19        [2]  Dr. Regazzi did expressly address the potential impact of plaintiff's cultural
     background in her evaluation.  AT 193.  However, Dr. Wakefield also expressly considered
20   plaintiff's cultural background in evaluating plaintiff.  AT 151, 154.  Given that psychiatrists are
     trained to incorporate cultural differences into their psychological evaluation, it was within the
21   province of the ALJ to resolve the conflicting mental health assessments.  See "Diagnostic and
     Statistical Manual of Mental Disorders," at xxxiii-xxxiv & Appendix 1 at 897-898 (4th Ed.
22   2000) ("DSM-IV-TR").

23        [3]  65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

24        Comment: Two commenters recommended that we discuss the Global
     Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They
25   noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and
     seemed to encourage its use, but then failed to mention it in the proposed rules.
26        Response: We did not adopt the comment.  We did not mention the GAF scale to

1    AT 332-333.  The psychiatrist also assessed plaintiff within the last year as having a GAF of 45;

2    impairment in the inability to work is only one example of the level of adaptation meriting such a

3    rating.  AT 332.  Here, there is no indication in the record that the psychiatrist's assessment of

4    plaintiff's GAFs was based on his inability to work.  Rather, the psychiatrist identified as long

5    term treatment goals "job training" appropriate to plaintiff's mental capacity.  AT 333.

6    Moreover, it is apparent from the body of the ALJ's decision that the ALJ thoroughly reviewed

7    these records and incorporated them into his assessment of plaintiff's residual functional

8    capacity.  AT 19-22.  Moreover, Dr. Regazzi, on whose opinion plaintiff contends the ALJ

9    should have relied, assessed plaintiff with a GAF of 55, indicating only moderate symptoms.

10   AT 193.  The ALJ did not err in assessing the record medical opinions.

11        B.   Credibility

12             Plaintiff further contends the ALJ improperly discredited his testimony.  The ALJ

13   determines whether a disability applicant is credible, and the court defers to the ALJ's discretion

14   if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94

15   F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility

16   finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d

17   1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific,

18   cogent reason for the disbelief").

19             In evaluating whether subjective complaints are credible, the ALJ should first

20   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

21   _____

22   endorse its use in the Social Security and SSI disability programs, but to indicate why the third
     sentence of the second paragraph of proposed 12.00D stated that an individual's medical source
23   "normally can provide valuable additional functional information."  To assess current treatment
     needs and provide a prognosis, medical sources routinely observe and make judgments about an
24   individual's functional abilities and limitations.  The GAF scale, which is described in the
     DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by
25   the American Psychiatric Association.  It does not have a direct correlation to the severity
     requirements in our mental disorders listings.

26

F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

After a thorough analysis of plaintiff's credibility, the ALJ concluded that to the extent plaintiff claimed he was precluded from all work activity, plaintiff was not credible.  AT 24-25.  The ALJ properly took into account the affirmative finding by Dr. Wakefield of malingering.  AT 153.  She also appropriately noted several inconsistencies in the record.  AT 24, 133, 274, 311, 327, 329, 331, 340, 347-348.  Although plaintiff argues at length regarding the interpretation of the inconsistencies noted by the ALJ, on the whole record, the court concludes the ALJ's interpretation of the noted inconsistencies is rational and should be upheld.  The ALJ

considered the discrepancy between plaintiff's minimal psychological treatment and his allegedly

debilitating psychological condition.  AT 24, 169, 311, 327.  The ALJ also noted plaintiff's

activities of daily living, which included helping with household work, walking and jogging,

watching television, and doing yard work.  AT 22, 342-344.  The factors considered by the ALJ

all were valid and supported by the record.  The ALJ's credibility determination was based on

permissible grounds and will not be disturbed.

C.  Lay Witness Testimony

Plaintiff also contends the ALJ improperly discredited the testimony of his mother

and uncle.  "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

ability to work is competent evidence, and therefore cannot be disregarded without comment."

Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915,

918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's

symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to

discount the testimony of the lay witnesses, he must give reasons that are germane to each

witness."  Dodrill, 12 F.3d at 919.

Plaintiff's mother filled out a third party questionnaire and plaintiff's uncle

testified at the hearing.  AT 90-98, 362-371.  The ALJ accorded little weight to this testimony.

AT 20, 23.  The ALJ discounted the testimony of plaintiff's mother because it was inconsistent

with the daily activities reported by plaintiff himself.  AT 20.  The ALJ also considered the

possible financial gain to plaintiff's mother and her household should plaintiff secure disability

benefits.  AT 356.  See Greger v. Barhart, 464 F.3d 968, 972 (9th Cir. 2006).  The ALJ

discounted the uncle's testimony because the record did not support the uncle's assertion that

plaintiff became so ill as to be disabled immediately upon graduation from high school.  AT 23.

These reasons are germane to these witnesses and supported by the record.  There was no error in

the ALJ's discounting of the lay witness testimony.

/////

8

1          D.  Residual Functional Capacity

2                    Plaintiff additionally contends the ALJ improperly assessed his residual functional

3     capacity.  Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner

4     for assessing residual functional capacity.  SSR 96-8p.  Residual functional capacity is what a

5     person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a)

6     (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional

7     capacity reflects current "physical and mental capabilities").

8                    In arguing that the residual functional capacity did not incorporate all of plaintiff's

9     functional limitations, plaintiff is essentially raising the same arguments as he did regarding the

10    ALJ's treatment of the opinions of the examining psychologists.  As discussed above, it was

11    within the province of the ALJ to resolve the conflict between the opinions of the examining

12    psychologists.  Moreover, the residual functional capacity assessed by the ALJ limited plaintiff to

13    simple job instructions, a finding consistent with the assessments of both Dr. Regazzi and Dr.

14    Wakefield, as well as the state agency physicians.  AT 26, 154, 156, 158-160, 193.  There was no

15    error in the residual functional capacity assessment.

16          E.  Vocational Expert

17                    Finally, plaintiff contends the ALJ improperly relied on hypotheticals which did

18    not include all of plaintiff's limitations and that the ALJ failed to resolve a conflict between the

19    DOT[4] and the vocational expert testimony.  Hypothetical questions posed to a vocational expert

20    must set out all the substantial, supported limitations and restrictions of the particular claimant.

21    Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all

22    the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant

23    _____

24         [4]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of
      Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a
25    claimant's past work, and in evaluating whether the claimant is able to perform other work in the
      national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies
26    jobs by their exertional and skill requirements.   The DOT is a primary source of reliable job
      information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

1    can perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

2    While the ALJ may pose to the expert a range of hypothetical questions, based on alternate

3    interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

4    determination must be supported by substantial evidence in the record as a whole.  Embrey v.

5    Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

6           The hypothetical as posed by the ALJ, as amended with the limitation of illiteracy,

7    fully included all the limitations incorporated in the ALJ's residual functional capacity finding,

8    which as discussed above, was supported by the record.  AT 24-25, 379-381.  The additional

9    limitation posed by plaintiff's attorney at the hearing, of only a fair ability to maintain persistence

10   and pace, is not supported by substantial evidence, given Dr. Wakefield's assessment of

11   malingering.  AT 382.

12          Plaintiff also contends that he could not perform the jobs identified by the

13   vocational expert because of his illiteracy in light of the GED[5] level of one required for the

14   identified jobs.  AT 383-384.  Plaintiff's contention is untenable.  A social security disability

15   applicant is not per se disabled because of illiteracy.  Pinto v. Massanari, 249 F.3d 840, 845 (9th

16   Cir. 2001).  Following plaintiff's rationale, not a single illiterate disability applicant would be

17   qualified for any of the jobs listed in the DOT.  Moreover, the record supports a finding that

18   plaintiff meets at least the identified GED level.  AT 120-121, 150.  The ALJ based his finding of

19   nondisability on the number of jobs identified by the vocational exert as available in California,

20   and as eroded by illiteracy.  AT 25, 380-381.  Because the vocational expert identified a total

21   26,600 such jobs available to plaintiff, substantial evidence supports the ALJ's finding that

22   plaintiff is not disabled.  See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in

23   /////

24
25          [5] Under the DOT guidelines, a language development level of one entails the ability to
     recognize 2,500 (two- or three-syllable words), compare similarities and differences between
26   words, print simple sentences and speak simple sentences.  DOT, Scale of General Education
     Development (GED) Language Development, Level 1; see also AT 383.

1 | the county and 64,000 nationwide are sufficient); <u>Barker v. Secretary HHS</u>, 882 F.2d 1474,

2 | 1478-79 (9th Cir. 1989) (1,200 jobs in Southern California are sufficient).

3 |    The ALJ's decision is fully supported by substantial evidence in the record and

4 | based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

5 |    1.  Plaintiff's motion for summary judgment or remand is denied, and

6 |    2.  The Commissioner's cross-motion for summary judgment is granted.

7 | DATED:  September 30, 2008.

8

9

10 | U.S. MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 | 006
xiong.ss

11